UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No.: 2:23-cv-00149-JHE |
| $4,790.00 IN UNITED STATES CURRENCY, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION[1]**

This is a civil forfeiture action *in rem* brought by Plaintiff United States of America ("the United States" or "Plaintiff") against $4,790.00 in United States currency, $19,169.00 in United States currency, and various jewelry. (Doc. 1). The United States has moved for summary judgment, contending it has established that the Defendant Property is subject to forfeiture as the proceeds of illegal drug activity. (Doc. 30). Claimants Eric Williams ("Williams") and Melanie Benjamin ("Benjamin," and, together with Williams, "Claimants") oppose the motion. (Doc. 36). As discussed further below, the United States' motion for summary judgment is **GRANTED**.

**I. Legal Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12.)

to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324.  (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor).  Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Procedural History

The United States filed this action on February 7, 2023, asserting claims against $4,790.00 in United States currency, $19,169.00 in United States currency, and various jewelry. (Doc. 1). The United States contends that the currency and jewelry are connected to drug activity. (*Id.* at ¶ 16).

On February 17, 2023, the United States provided notice to Benjamin and Williams that it had filed the complaint. (Docs. 4 & 5). Benjamin and Williams both answered the complaint, each claiming an interest in some or all of the Defendant Property. (Docs. 8 & 9). Specifically, Benjamin asserted an interest in the two quantities of currency (but not the jewelry) (doc. 8 at ¶¶ 1, 6), while Williams asserted a co-ownership interest in the currency and an interest in the jewelry (doc. 9 at ¶¶ 1, 5). Both denied any connection between the Defendant Property and illegal drug transactions. (Doc. 8 at ¶ 2; doc. 9 at ¶¶ 2, 5).

On May 15, 2023, the parties jointly moved to stay this case pursuant to 18 U.S.C. § 981(g)(1) and (2) due to a pending criminal investigation against Williams in the District of South Carolina (the "South Carolina Action").[2] (Doc. 13). The undersigned granted that motion.

---

[2] Under 18 U.S.C. § 981(g), a court must stay a civil forfeiture action if (1) the United States moves to stay and "the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case" or (2) the claimant moves to stay and the court determines that "the claimant is the subject of a related criminal investigation or case," "the claimant has standing to assert a claim in the civil forfeiture proceeding," and "continuation of the forfeiture proceeding will burden the

(Doc. 14). The case remained stayed until February 21, 2024, when the United States moved to lift the stay based on Williams' guilty plea in the South Carolina Action (doc. 21), and the undersigned granted that motion (doc. 22).

After several extensions of the dispositive motion deadline (*see* docs. 26, 27, 28 & 29), the United States filed the instant motion for summary judgment on January 29, 2025. (Doc. 30). It filed additional evidence the following day. (Doc. 31). The undersigned set a briefing schedule on the motion, requiring a response from Claimants by February 20, 2025. (Doc. 32). The undersigned subsequently granted Claimants' motion for an extension of time to file a response (doc. 33), setting the response deadline for March 3, 2025. (Doc. 34). Claimants did not file a response by that deadline, so the undersigned entered an order providing Claimants an additional week to file a response; after that deadline, if no response were filed, "the undersigned [would] consider [the United States'] motion to be unopposed." (Doc. 35).

On March 7, 2025, Claimants filed a response to the motion for summary judgment. (Doc. 36). In the response, Claimants' counsel described his attempts to gather evidence to oppose the motion for summary judgment. This involved attempting to meet with Benjamin and to secure an affidavit setting out her side of the story. Counsel stated that Benjamin provided the following information to him:

> Benjamin is currently employed as a customer service representative for Alabama Power. Benjamin does not currently have a permanent residence. Her last address was 129 Heights Drive, Calera, AL 35040. She lived there for approximately one (1) and a half (1/2) years until November of 2024. In August of 2022, she did go to

---

right of the claimant against self-incrimination in the related investigation or case." In their joint motion, the United States asserted a stay was necessary under the first § 981(g) ground and Claimants asserted a stay was necessary under the second. (*See* doc. 13).

4

a hotel in Georgia. She does not remember it being in Union City, but does not dispute that fact. She did remove Eric Williams' clothes, PlayStation, black bag, and his suitcase from the hotel room. She does not remember the telephone conversation referred to in the government's motion for summary judgment in which the government says that Eric asked if she 'picked up the money from his hotel room' and she told him that she did. She did not knowingly and intentionally remove any money from that hotel room. She did not remove any weapons or any drug-related money from Eric's house in McCalla, Alabama. She did find some firearms hidden at the house, and pulled them out and left them in plain view. She believes that law enforcement agents seized the firearms when they executed a search warrant at the McCalla house. In 2022, she ran two businesses: Sekerts [sic] Lounge & Event Center, 3802 Edwards Street, Bessemer, Alabama 35020 and Dat-Burga-Plase, 1400 9th Avenue North, Bessemer, Alabama 35020. The $4,790 that was seized from her purse on August 13, 2022, was not money related to any drug transaction. The money came from the operation of the two businesses (Sekerts and Dat-Burga-Plase). She had the money to pay the rap musical group Dirty Boyz who were to perform at the Sekerts Lounge & Event Center on August 20, 2022. (A copy of the contract is attached.) The 2017 Dodge Challenger is in Eric's name, but it is the car that she drives. She believes that she is a co-signer on the loan, and has been paying the monthly payments. She did permit law enforcement agents to search the Challenger on August 13, 2022. The $19,169 that was seized from the trunk of the car was money from the operation of Sekerts and Dat-Burga-Plase, and her income tax refund. She did voluntarily talk and cooperate with the DEA agents. She does not recall telling the agents that the money in her purse was proceeds from Eric's drug trafficking operation. She does not recall telling the agents that she went to a hotel in Union City, Georgia to retrieve Eric's money. She does recall that the agents told her that is what she did, and that the money was proceeds from Eric's drug trafficking operation. No drugs were found in her purse, her car, her house, or on her person. She did receive the Interrogatories and Requests for Production from her attorney. The documents that she needs to answer them are in storage and she has been unable to locate them.

(Doc. 26 at 1–3, ¶ 3).[3] Counsel prepared an affidavit containing that information for Benjamin to execute and "cautioned Benjamin that the information she provided must be the truth and that she should [sic] execute the affidavit unless the information was the truth." (*Id.* at 3, ¶ 4). Benjamin

---

[3] Counsel has attached an undated, unsigned copy of the contract referenced in the statement. (Doc. 36 at 6–7).

5

subsequently failed to execute the affidavit despite counsel following up with her multiple times. (*Id.*, ¶ 5).  Benjamin also indicated to counsel that her business and personal financial records were in storage and that she was attempting to locate them.[4]  (*Id.* at 4, ¶ 7).  In addition to these records, Benjamin stated to counsel that she had provided him with some financial documents in 2022, which counsel was attempting to locate.  (*Id.* at 3, ¶ 6).  Counsel requested an additional fourteen days "to supplement this response with any additional records that may support the [Claimants'] claim to the property subject to this forfeiture action."  (*Id*., ¶ 8).

The undersigned granted Claimants' motion, providing Claimants until March 24, 2025, to file a supplemental response.  (Doc. 37).  Claimants did not do so.  Although the undersigned also provided a deadline for the United States to reply (*see id.*), it did not file one.

### III. Summary Judgment Facts[5]

In August 2022, the Drug Enforcement Agency ("DEA") was in the process of

---

[4] Counsel provided a photograph of the storage unit along with his response.  (Doc. 36 at 8).

[5] As recounted in the procedural history section above, the claimants have provided almost no evidence in opposition to the United States' motion for summary judgment.  Nor, other than through counsel's recitation of Benjamin's statement to him—which is not evidence, *see United States v. Smith,* 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]tatements and arguments of counsel are not evidence.")—does the claimants' response address any of the allegedly undisputed facts contained in the United States' motion.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion . . . ."  FED. R. CIV. P. 56(e)(2).  In light of the opportunities Claimants have had to present evidence in opposition to the United States' motion, the undersigned exercises that discretion and will consider the majority of the facts contained in the United States' motion to be undisputed.  Where the only actual piece of evidence Claimants have presented (the alleged Dirty Boyz Performance Agreement referenced in Benjamin's purported statement and attached to the response) is relevant to a fact, it is addressed below.

investigating Williams on suspicion that Williams received cocaine from a source in Mexico and distributed it in various locations in the Southeast: Birmingham, Alabama; Montgomery, Alabama; Atlanta, Georgia; Union City, Georgia; and Spartanburg, South Carolina.  (Doc. 1 at 2, ¶ 5; doc. 31-1 at 1).  On August 10, 2022, law enforcement officers observed Williams traveling in a Ford Explorer from Birmingham to a hotel in Union City.  (Doc. 1 at 2, ¶ 6; doc. 31 at 1, ¶¶ 2–3).  The next day, two officers surveilled Williams as he traveled from the Union City hotel north on Interstate 85 towards Spartanburg.  (Doc. 1 at 2–3, ¶ 7; doc. 31 at 1, ¶ 4).

In Spartanburg, officers observed Williams' vehicle parked at the Upstate RV Repair Yard in front of a trailer with two Hispanic males, Jesus Vargas and Domingo Moran, also present.  (Doc. 1 at 2–3, ¶ 7; doc. 31 at 1–2, ¶ 4).  Officers approached the scene.  Moran stated that all three were waiting for a truck to load and transport the trailer.  (Doc. 1 at 2–3, ¶ 7; doc. 31 at 2, ¶ 6).  A K-9 unit eventually arrived on the scene to conduct an open-air sniff; the dog alerted on both the Explorer and the trailer.  (*Id.*).  The officers obtained a state search warrant and searched the Explorer and the trailer, ultimately recovering 7 kilograms of cocaine from the trailer.  (Doc. 1 at 3, ¶ 8; doc. 31 at 2, ¶ 7).  Although no drugs were discovered in the Explorer, officers did observe hidden compartments under both front seats.  (*Id.*).  Williams, Vargas, and Moran were arrested by local law enforcement officers for possession of cocaine.  (*Id.*).

On August 12, 2022, officers observed Williams' second vehicle—a Dodge Challenger— leave Birmingham and travel to Union City, ultimately arriving at the same hotel where Williams had previously stayed.  (Doc. 1 at 3, ¶ 9; doc. 31-3).  The vehicle returned to Birmingham the same day.  (*Id.*).

Beginning on August 12, 2022, law enforcement officers recorded jail phone calls made

by Williams to Benjamin, who is Williams' girlfriend. (Doc. 1 at 3, ¶ 10; doc. 31-1 at 6; doc. 31-2 at 5). In one call, Williams asked Benjamin if she had picked up the money from his Union City hotel room; Benjamin confirmed that she had done so. (*Id.*). In another call, Williams directed Benjamin to remove weapons and currency from his residence; again, Benjamin confirmed that she had done so.[6] (*Id.*).

On August 13, 2022, officers executed a state search warrant at Williams' residence in McCalla, Alabama, ultimately seizing 6 guns, 18 cellphones, various jewelry, and 1,176.9 grams of "an unknown substance wrapped in plastic and silver tape." (Doc. 1 at 3–4, ¶ 11; doc. 31-4 at 1–2, ¶ 3). Simultaneously with this search, officers observed Benjamin driving the Challenger. (Doc. 1 at 4, ¶ 12; doc. 30-3 at 1, ¶ 2). Benjamin parked the Challenger and got into a Nissan Rogue with two other females. (*Id.*). An officer stopped the Rogue based on its expired tag and a failure to signal offense. (Doc. 30-3 at 1, ¶ 3). All three occupants gave the officers permission to search the Rogue, resulting in the discovery and seizure of Defendant Property $4,790.00 in Benjamin's purse. (*Id.* at 1–2, ¶ 4).

DEA agents subsequently conducted an interview with Benjamin. Benjamin stated that the currency seized from her purse was the proceeds of Williams' drug trafficking operation.[7] (Doc.

---

[6] Williams also stated during one of these calls that he had two weapons stored at Sekrets Lounge & Events, a nightclub owned and operated by Williams. (Doc. 31-3 at 3). A subsequent search of Sekrets turned up two firearms. (*Id.*).

[7] As discussed above, counsel's recitation of Benjamin's purported statement indicates that Benjamin "had the money to pay the rap musical group Dirty Boyz who were to perform at the Sekerts [sic] Lounge and Event Center on August 20, 2022." (Doc. 36 at 2). This explanation allegedly contextualizes the attached Performance Agreement between Dirty Boyz and NAW (apparently a DBA for Williams). (*Id.* at 6–7). As presented, though, the explanation is just

31-3 at 1–2). Benjamin also gave consent to search the Challenger, which she stated contained money and jewelry belonging to Williams. (Doc. 31-1 at 5; doc. 31-2 at 5). In the Challenger's trunk, officers discovered Defendant Property $19,169.00 along with Defendant Property Various Jewelry in a shoebox.[8] (*Id.*; doc. 1 at 4–5, ¶¶ 14–15). Benjamin did not claim ownership of the $19,169.00. (Doc. 31-2 at 5). DEA investigators determined that neither Williams nor Benjamin had a legitimate source of income at the time of the seizure of the Defendant Property. (Doc. 31-1 at 6).

Williams was indicted in the United States District Court for the District of South Carolina on April 11, 2023, on one count of conspiring to distribute drugs and three counts of possession of cocaine with intent to distribute.[9] (Doc. 30-1). The indictment also contained a forfeiture provision. (*Id.*). On July 20, 2023, pursuant to a plea agreement, Williams pleaded guilty to the conspiracy count, admitting that he had engaged in the charged conduct. (*See* doc. 30-2).

---

Claimants' counsel's unsupported statement. Claimants' counsel has pointedly *not* been able to obtain an affidavit or declaration from his clients to reduce the explanation to evidentiary form. The undersigned declines to consider any context for the Performance Agreement's relevance under these circumstances. *See Smith,* 918 F.2d at 1562 ("[S]tatements and arguments of counsel are not evidence."). Without that context, it is an impermissible exercise of pure speculation to connect the Performance Agreement to the Defendant $4,790.00. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

[8] Specifically, as described in the complaint, the Various Jewelry consists of: (1) a 10K yellow gold diamond ring, 168 single cut diamonds, estimated total 0.84 carats, worth approximately $1,386.00; (2) a 36.5-inch long, 0.75-inch wide 10K yellow gold curb link necklace, worth approximately $3,630.00; and (3) a 30.75-inch long, 5/8-inch wide 10K yellow gold curb link necklace, worth approximately $2,585.00. (Doc. 1 at 4–5, ¶ 15).

[9] Vargas and Moran were also indicted on the conspiracy count and one of the possession counts. (*See* doc. 30-1).

## IV. Analysis

To prevail on summary judgment in a civil forfeiture case, the Civil Asset Reform Act of 2000 requires the United States to "establish, by a preponderance of the evidence that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Where (as here) the United States alleges that the Defendant Property was "involved in the commission of a criminal offense," it must show "a substantial connection between the [Defendant Property] and the offense." 18 U.S.C. § 983(c)(3). Either direct or circumstantial evidence will satisfy the United States' summary judgment burden. *United States v. $291,828.00*, 536 F.3d 1234, 1237 (11th Cir. 2008).

Here, the United States alleges that the Defendant Property was the proceeds of Williams' drug distribution activity, as assisted by Benjamin. (Doc. 30 at 9). As discussed above, the evidence, including Williams' guilty plea, support that Williams was engaged in a multistate drug trafficking operation. The evidence also supports that Williams directed Benjamin on recorded jail phone calls to retrieve property he left at the Union City hotel during a trip to conduct a transaction involving cocaine. Benjamin confirmed on these recorded calls that she had done so. As detailed above, the Challenger was surveilled driving from Birmingham to Union City and back. Benjamin was subsequently surveilled driving the Challenger, parking it, and driving away in the Rogue. And, during her interview with the DEA, Benjamin "indicated that there was money and jewelry in the trunk of the gray 2017 Dodge Challenger that she was driving which belonged to Eric Williams." (Doc. 31-3 at 2). The evidence also indicates that Williams had no legitimate source of income. The logical inference is that the two pieces of the Defendant Property found in the Challenger—the $19,169.00 in currency and the jewelry—were connected to Williams' drug activity. As for the $4,790.00 found in Benjamin's purse, Benjamin admitted to investigators that

it constituted "proceeds of [Williams'] Drug Trafficking Operation." (Doc. 31-3 at 1–2). Taking that evidence into account, the United States has met its burden to show by a preponderance of the evidence that each Defendant Property was connected to Williams' drug activity.

If (as here) the United States meets its burden under § 983(c)(1), the burden shifts back to the claimant to prove by a preponderance of the evidence a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture. 18 U.S.C. § 983(d). The United States asserts that Claimants did not provide responses to its interrogatories and requests for production and that Claimants also failed to respond to its attempts to schedule depositions. (Doc. 30 at 2–3). Thus, it says, there is no actual evidence to support either Claimant's claim to the Defendant Property. Claimants acknowledge at least some of this in their response to the motion for summary judgment—at least insofar as counsel repeats Benjamin's claims that she received the interrogatories and requests for production, but that the documents that would support her claim to the currency are in storage and have not been located. (Doc. 26 at 3). In any case, as discussed above, there is no viable evidence to support that the property at issue is not subject to forfeiture.[10]

---

[10] As discussed above, *see supra*, n.7, there is no evidentiary context for the Dirty Boyz Performance Agreement to connect it to the Defendant $4,790.00. Even if Benjamin had submitted an affidavit containing her statement, though, the Performance Agreement would fail to create a factual issue sufficient to defeat summary judgment. The undersigned notes that the Performance Agreement requires Williams (not Benjamin) to pay Dirty Boyz $2,750.00, with a deposit of $1,375.00 to be paid by "Walmart to Walmart," "PayPal," or "Cash App." (Doc. 36 at 6–7). It is unclear how the sum of $4,790.00 seized from Benjamin's purse corresponds to either the full amount of the Performance Agreement or to the non-deposit portion of the Performance Agreement (given that the deposit was specifically required to be paid electronically). Further, the Performance Agreement is unsigned and undated. (*See id.* at 7). Given that the Performance Agreement specifically contemplates that it "shall constitute a contract" only "when signed by the parties" (*id.* at 6), the Performance Agreement as provided to the court does not support that it was an executed, enforceable contract.

Nor does either claimant assert a defense to forfeiture. (*See generally* doc. 36). Accordingly, the United States' motion for summary judgment is due to be granted.

## V. Conclusion

For the reasons stated above, the United States' motion for summary judgment is **GRANTED**. The United States is **DIRECTED** to submit a proposed Order and Judgment of Forfeiture by **September 30, 2025**.

DONE this 23rd day of September, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE